IN THE UNITED STATES DISTRICT COURT
EASTERN DISCTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LAURIE D. ZALEUKE,<br>    Plaintiff,<br><br>v.<br><br>ARCHDIOCESE OF ST. LOUIS,<br>A Missouri Non-Profit Corporation<br><br>and<br><br>ASSUMPTION CATHOLIC CHURCH-<br>O'FALLON d/b/a ASSUMPTION PARISH,<br>A Missouri Non-Profit Corporation<br>    Defendants. | Case No.: 4:19-cv-2856<br><br><br><br><br>**JURY TRIAL DEMANDED** |

## AMENDED COMPLAINT

COMES NOW Plaintiff Laurie D. Zaleuke, by and through her undersigned counsel, and for her Amended Complaint ("Complaint") against Defendant Archdiocese of St. Louis and Defendant Assumption Catholic Church-O'Fallon d/b/a Assumption Parish ("Defendant Assumption Parish") states as follows:

## JURISDICTION AND VENUE

1. This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) *et seq.* ("Title VII"), to redress Plaintiff Laurie D. Zaleuke's claims of sex discrimination, retaliation and harassment.

2. The Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331, as Plaintiff's Complaint alleges violations of Title VII of the Civil Rights Act of 1964, as amended, *et seq.*

3. Venue is proper in the United States District Court for the Eastern District of Missouri, pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to the claims occurred in the City of O'Fallon, Missouri.

4. Divisional venue is proper in the Eastern Division because a substantial part of the events leading to the claims for relief arose in the City of O'Fallon, and Defendants are in incorporated and headquartered in the Eastern Division. E.D. Mo. L.R. 2.07(A)(1), (B)(1).

5. Plaintiff demands a trial by jury, pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

6. Plaintiff, Laurie D. Zaleuke (sometimes hereafter referred to as "Plaintiff"), is a United States citizen and a resident of St. Charles County, Missouri. During all pertinent times hereto, Plaintiff was a resident of St. Charles County, Missouri.

7. Defendant Archdiocese of St. Louis is incorporated as a domestic non-profit corporation, duly organized under the Constitution of Missouri and doing business in the State of Missouri, with its principal place of business located in St. Louis County, Missouri, at 20 Archbishop May Drive, St. Louis, MO 63319.

8. Defendant Assumption Catholic Church-O'Fallon d/b/a Assumption Parish is incorporated as a domestic non-profit corporation, duly organized under the Constitution of Missouri and doing business in the State of Missouri, with its principal place of business located in St. Charles County, Missouri, at 403 N. Main St., O'Fallon, MO 63366.

## FACTS

9. Plaintiff realleges and incorporates herein by reference each and every of the preceding allegations of this Complaint as if fully set forth herein.

10. Plaintiff was employed as the Principal of Assumption Catholic Church-O'Fallon from July 1, 2016, until she was constructively discharged on or about June 30, 2018.

11. At all pertinent times hereto, Defendant Assumption Parish, was an "employer" as defined by Title VII, in that Defendant Assumption Parish employs fifteen (15) persons or more in the State of Missouri, and may be served by and through its Registered Agent, Reverend Monsignor Jerome Billings, located at 20 Archbishop May Drive, St. Louis, Missouri 63319.

12. Defendant Archdiocese of St. Louis governs and oversees the operation of various Catholic churches, and their respect schools, throughout the greater St. Louis area.

13. Defendant Archdiocese of St. Louis has received notice of each of the below-described administrative actions and participated in such administrative proceedings.

14. Plaintiff has satisfied all administrative prerequisites to suit.

15. On or about November 29, 2018, Plaintiff filed an administrative charge of Discrimination with the U.S. Equal Employment Opportunity Commission (the "EEOC") Charge # 560-2019-00420.

16. EEOC Charge # 560-2019-00420 was filed concurrently with the Missouri Commission on Human Rights (the "MCHR") and assigned MCHR Charge # FE-11/18-29924.

17. On or about March 8, 2019, the MCHR issued a Notice of Termination of Proceedings in connection with MCHR Charge # FE-11/18-29924, due to a lack of jurisdiction over Defendant Assumption Parish.

18. On or about July 24, 2019, the EEOC issued a Notice of Suit Rights.

19. In his capacity as Pastor of Defendant Assumption Parish, Reverend Father Mitch Doyen ("Doyen") was Plaintiff's direct supervisor.

20. Doyen is responsible for employing Plaintiff to be Principal of Assumption Parish-O'Fallon.

21. During all pertinent times hereto, and upon information and belief, Doyen was the head supervisor for all employees of Defendant Assumption Parish and oversaw all aspects of Defendant Assumption Parish's day-to-day operations, including approval of all expenditures.

22. Plaintiff is a female.

23. Doyen is a male.

**Financial Irregularities.**

24. During all pertinent times hereto, despite an increase in students as a direct result of Plaintiff's actions, the Defendant Assumption Parish was losing money.

25. On more than one occasion, Plaintiff would be informed that a school event would raise a profit of thousands of dollars only to be informed later by Doyen that the event lost money.

26. Plaintiff began keeping track of the financial records herself in an attempt to reconcile the conflicting statements.

27. Upon information and belief, Doyen was abusing his position and misappropriating Defendant Assumption Parish's funds.

28. Plaintiff brought her findings regarding the financial irregularities to the attention of Doyen.

**Invitations to Retreats.**

29. Doyen's offensive behavior directed toward Plaintiff included, but is not limited to, repeatedly making requests of Plaintiff to join him on weekend retreats during both the scholastic year and summer months, despite Doyen's knowledge that Plaintiff was married.

30. Upon information and belief, Doyen required all employees of Assumption Parish to participate in these retreats, female and male alike.

31. It was well known by the employees of Defendant Assumption Parish that male employees could be excused from participating in these retreats simply by voicing to Doyen that they felt uncomfortable.

32. It was equally well known by the employees of Defendant Assumption Parish that if female employees voiced concern to Doyen over feeling uncomfortable with participating in the retreats that they would be subjected to further discussions, requests to pray for a week and discuss further, and other examples of the female employees being pressured to participate in the retreats until they felt they had no option but to agree.

33. Upon information and belief, Doyen used these retreats as opportunities to gain inappropriate emotional contact with the female employees of Assumption Parish, gaining insight into the female employees' lives as part of his overall plans to manipulate and seduce the female employees.

34. Upon information and belief, after Plaintiff repeatedly refused the inappropriate requests of Doyen, Doyen altered his behavior toward Plaintiff from one of a polite and professional relationship to an antagonistic and abusive relationship, and created a hostile work environment for Plaintiff in the process.

35. Doyen's abusive and offensive behavior included, but is not limited to, bursting into employee meetings and accusing Plaintiff of wrongdoing by yelling at Plaintiff and the other employees in an attempt to force individuals to place blame on Plaintiff.

36. Furthermore, Doyen allowed gossip about Plaintiff to continue unabated, thereby undermining her authority.

**Home Visits.**

37. Doyen's offensive behavior directed toward Plaintiff included, but is not limited to, requiring all female employees of Defendant Assumption Parish to participate in Home Visits.

38. Upon information and belief, a Home Visit (hereinafter "Home Visit") involved an employee of Defendant Assumption Parish visiting the home of parishioners of Defendant Assumption Parish for the purpose of explaining to the parishioners all of the ways in which the Defendant Assumption Parish can assist the parishioners.

39. Upon information and belief, the true purpose of the Home Visits was to procure a donation commitment from each of the parishioners visited due to Defendant Assumption Parish's financial strain.

40. As part of Defendant Assumption Parish's female employees' responsibilities in completing their nine Home Visits, Doyen provided a schedule for these Home Visits that he required each of Defendant Assumption Parish's female employees to follow.

41. Prior to each Home Visit, the female employee was required to spend one hour at Defendant Assumption Parish's church praying before spending a minimum of one hour with each parishioner during the Home Visit and followed by an additional thirty minutes of praying at Defendant Assumption Parish's church, for a total of approximately two and a half hours of additional work (hereinafter the "Schedule")

42. The Schedule did not include travelling time to and from Defendant Assumption Parish's church and the homes of the parishioners.

43. Upon information and belief, the female employees were required to complete their Home Visits on Monday through Friday evenings or Saturdays and Sundays.

44. Upon information and belief, the female employees did not receive additional compensation for the Home Visits despite it being a requirement of their employment with Defendant Assumption Parish as required by Doyen.

45. During the Fall of the 2017 scholastic year, Doyen required all female employees of Defendant Assumption Parish to lead and complete nine Home Visits before December of 2017.

46. Upon information and belief, no male employees of Defendant Assumption Parish were required to complete any Home Visits.

47. As a result of Doyen's behavior, by and through his capacity as the supervisor for all employees of Defendant Assumption Parish, Doyen created and sustained a hostile working environment.

48. On or about February 2, 2018, and as a direct and proximate result of Defendant Assumption Parish's actions, including the hostile working environment created by the actions of Doyen as referenced above, Plaintiff was removed from her position pending her termination on June 30, 2018.

49. On or about February 2, 2018, Plaintiff submitted a letter of resignation drafted by Ms. Stephanie Wehling and Ms. Peggy Visconti of the St. Louis Archdiocese.

50. After Plaintiff was forced to submit a letter of resignation on February 2, 2018, she was officially removed from her position on June 30, 2018, being the end of the scholastic year.

51. Since her unjust removal from her position as Principal for Defendant Assumption Parish, Plaintiff has experienced great difficulties in procuring new employment, despite her good faith efforts.

52. Upon information and belief, Doyen has spread misinformation regarding Plaintiff's departure from Defendant Assumption Parish, leading many potential employers from further pursuing Plaintiff for possible employment.

53. Prior to Plaintiff's repeated refusals to participate in retreats with Doyen, and prior to Plaintiff's discovery and disclosure to Doyen of financial irregularities with Defendant Assumption Parish's financial records, Plaintiff received glowing reviews from Doyen and enjoyed a polite and professional relationship with Doyen.

54. As a direct and proximate result of Defendant Assumption Parish's actions, Plaintiff has sustained, and will continue to sustain, lost wages and benefits.

55. As a direct and proximate result of Defendant Assumption Parish's actions, Plaintiff has sustained, and will continue to sustain, pain and suffering.

56. As a direct and proximate result of Defendant Assumption Parish's actions, Plaintiff has suffered, and will continue to suffer, emotional distress.

57. As a direct and proximate result of Defendant Assumption Parish's actions, Plaintiff has incurred, and will continue to incur, attorneys' fees and costs of litigation.

**COUNT I**
**SEX DISCRIMINATION IN VIOLATION OF**
**TITLE VII OF THE CIVIL RIGHTS ACT**

58. Plaintiff realleges and incorporates herein by reference each and every of the preceding allegations of this Complaint as if fully set forth herein.

59. Plaintiff suffered an adverse employment action when she was forced to resign after enduring an offensive and hostile working environment because of her sex.

60. Plaintiff's delay in reporting her complaints were excusable due to a legitimate concern that the employer would not take her claim seriously due to her direct supervisor being the offending party.

61. Any purported reasons that Defendant Assumption Parish might offer for these actions is nothing but pretext to conceal Defendant Assumption Parish's illegal discrimination against Plaintiff.

62. All actions or inactions of or by Defendant Assumption Parish occurred by or through its agents, servants, or employees acting within the course and scope of their employment, as set forth herein.

63. Plaintiff's sex was a compelling factor in such behavior as above-described.

64. Defendant Assumption Parish's actions constitute an unlawful employment practice and a violation of Plaintiff's rights under Title VII, as secured by 42 U.S.C. § 2000(e) *et seq*.

65. As a direct and proximate result of such conduct, Plaintiff sustained damage due to her constructive discharge resulting in lost wages and retirement benefits.

66. As a direct and proximate result of the acts of Defendant Assumption Parish as alleged herein, Plaintiff has suffered and will continue to suffer emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of reputation.

67. The conduct of Defendant Assumption Parish and its employees was outrageous, and evidences an evil motive or reckless indifference for the rights of Plaintiff and others similarly situated, entitling Plaintiff to an award of punitive damages.

WHEREFORE, Plaintiff, Mrs. Laurie D. Zaleuke, respectfully requests judgment in her favor against Defendant Assumption Parish for compensatory damages and punitive damages in excess of $75,000.00, together with pre- and post-judgment interest, plus costs of this action, reimbursement of back pay with interest, reinstatement and/or front pay, equivalent benefits associated with the position including full retirement benefits, medical benefits and tuition benefits, attorneys' fees, and such other relief as the Court may deem just and proper under the circumstances.

**COUNT II**
**RETALIATION IN VIOLATION OF**
**TITLE VII OF THE CIVIL RIGHTS ACT**

68. Plaintiff realleges and incorporates herein by reference each and every of the preceding allegations of this Complaint as if fully set forth herein.

69. Plaintiff's continued refusal to participate in retreats with Doyen, as well as Plaintiff's disclosure to Doyen of the financial irregularities in Defendant Assumption Parish's accounting, resulted in negative evaluations from Doyen with no basis for support, the removal from her position as Principal by Doyen, her termination by Doyen and ultimately increased difficulties with procuring replacement employment as a result of the misinformation spread by Doyen regarding Plaintiff's departure from Defendant Assumption Parish.

70. Defendant Assumption Parish retaliated against Plaintiff by, among other things and without limitation, constructively terminating Plaintiff's employment after Plaintiff reported violations of Title VII to Defendant Assumption Parish.

71. Defendant Assumption Parish's deliberate retaliation in response to Plaintiff's opposition to Defendant Assumption Parish's discriminatory employment practices violated the anti-retaliation provisions of Title VII.

72. The conduct of Defendant Assumption Parish and its employees was outrageous, and evidences an evil motive or reckless indifference for the rights of Plaintiff and others similarly situated, entitling Plaintiff to an award of punitive damages.

73. WHEREFORE, Plaintiff, Mrs. Laurie D. Zaleuke, respectfully requests judgment in his favor against Defendant Assumption Parish for compensatory damages and punitive damages in excess of $75,000.00, together with pre- and post-judgment interest, plus costs of this action, reimbursement of back pay with interest, reinstatement and/or front pay, equivalent benefits associated with the position including full retirement benefits, medical benefits and tuition benefits, attorneys' fees, and such other relief as the Court may deem just and proper under the circumstances.

**COUNT III**
**HARASSMENT IN VIOLATION OF**
**TITLE VII OF THE CIVIL RIGHTS ACT**

74. Plaintiff realleges and incorporates herein by reference each and every of the preceding allegations of this Complaint as if fully set forth herein.

75. Plaintiff is an individual protected within the meaning of Title VII.

76. Title VII forbids an employer from discriminating against any individual with respect to her "race, color, religion, sex, national origin, age, disability or genetic information."

77. Harassment becomes unlawful where 1) enduring the offensive conduct becomes a condition of continued employment, or 2) the conduct is severe or pervasive enough to create a work environment that a reasonable person would consider intimidating, hostile, or abusive.

78. Such illegal acts include subjecting an individual to a hostile work environment as a result of that individual's race, color, religion, sex, national origin, age, disability or genetic information.

79. As more fully delineated in the Facts section herein, Defendant Assumption Parish's conduct, by and through the conduct of its employees, including its supervisor, was severe or pervasive enough to create a work environment that a reasonable person would consider intimidating, hostile, or abusive.

80. Plaintiff was subjected to a hostile and offensive work environment by Defendant Assumption Parish based on her sex and in the form of retaliation, which Plaintiff found and a reasonable person would find to be offensive, and which altered the terms and conditions of her employment.

81. Through the actions of its supervisor, Defendant Assumption Parish subjected Plaintiff to conduct that she found, and that a reasonable person would find, sufficiently severe or pervasive to alter the terms, privileges, or conditions of her employment and create a hostile and abusive working environment.

82. All actions or inactions of or by Defendant Assumption Parish occurred by or through its agents, servants, or employees acting within the course and scope of their employment, as set forth herein.

83. As a direct and proximate result of the unlawful conduct of Defendant Assumption Parish, as set forth herein, Plaintiff has suffered damages which include loss of past and future wages and benefits, a detrimental job record, both past and future, career damage and diminished career potential, mental distress in the form of embarrassment, degradation, humiliation, mental anguish, anxiety, loss of enjoyment of life, loss of sleep, and other non-pecuniary losses.

84. The conduct of Defendant Assumption Parish and its employees was outrageous, and evidence an evil motive or conscious disregard for the rights of Plaintiff and others similarly situated, entitling Plaintiff to an award of punitive damages.

85. WHEREFORE, Plaintiff, Mrs. Laurie D. Zaleuke, respectfully requests judgment in her favor against Defendant Assumption Parish for compensatory damages and punitive damages in excess of $75,000.00, together with pre- and post-judgment interest, plus costs of this action, reimbursement of back pay with interest, reinstatement and/or front pay, equivalent benefits associated with the position including full retirement benefits, medical benefits and tuition benefits, attorneys' fees, and such other relief as the Court may deem just and proper under the circumstances.

Respectfully submitted,

KODNER WATKINS, LC

By: /s/ Albert S. Watkins
ALBERT S. WATKINS, #34553
ANTHONY S. BRETZ, #61075
MICHAEL D. SCHWADE, #60862
Attorneys for Plaintiff
7733 Forsyth, Suite 600
St. Louis, Missouri 63105
(314) 727-9111
(314) 727-9110 Facsimile
E-mail: albertswatkins@kwklaw.net
tbretz@kwklaw.net
mschwade@kwklaw.net

**CERTIFICATE OF SERVICE**

Signature above is also certification a true and correct copy of the above and foregoing has been filed electronically using the Court's CM/ECF system this 23rd day of June, 2020, which will cause a copy of same to be served upon all counsel of record.